IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>  v.<br><br>MICHAEL RODRIGUEZ<br><br>        Defendant. | Case No. 1:CR 09-279-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to dismiss filed by defendant Rodriguez. The Court heard oral argument on April 5, 2011, and took the motion under advisement. For the reasons expressed below, the Court will deny the motion.

## LITIGATION BACKGROUND

Defendant Rodriguez is charged with a single count of violating the Clean Water Act for placing dredge or fill material into Tenmile Creek without a required permit. The Indictment alleges that Tenmile Creek and its adjacent wetlands are a tributary of the Boise River, and that the Boise River is "navigable water" governed by the Clean Water Act.

This charge can be traced in more detail through the statutory language. The Clean Water Act (CWA) prohibits the "discharge of any pollutant," *see* 33 U.S.C. § 1311(a), which is defined as "any addition of any pollutant *to navigable waters* from

**Memorandum Decision & Order - 1**

any point source." *See* 33 U.S.C. §1362(12)(A) (emphasis added). The term "navigable waters" means "the waters of the United States." 33 U.S.C. § 1362(7). The term "waters of the United States" means "all waters which are currently used, were used in the past, or may be susceptible for use in interstate or foreign commerce . . . ." *See* 40 C.F.R. § 122.2.

The Indictment alleges that the Boise River in Ada County is a water of the United States under this definition. *See Indictment (Dkt. 1)* at ¶ 10. The term "waters of the United States" also includes "[t]ributaries" of those waters and any "wetlands adjacent to such waters." *See* 40 C.F.R. § 122.2. The Indictment alleges that Tenmile Creek and its adjacent wetlands are a tributary of the Boise River under this definition. *See Indictment (Dkt. 1)* at ¶ 11.

Rodriguez argues that Tenmile Creek is misnamed, because it is an irrigation drain rather than a free-flowing creek. The source of the water is critical, Rodriguez argues, because when the CWA regulations were published in the Federal Register, the Army Corp of Engineers (ACE) stated in the preamble that it "generally do[es] not consider the following waters to be 'Waters of the United States' . . . (b) Artificially irrigated areas which would revert to upland if the irrigation ceased." *See* 51 Fed.Reg. 41206, 41217 (November 13, 1986). The ACE followed this up in 2007 with a Regulatory Guidance Letter that quotes this preamble language and concludes that "[t]hus, waters, including wetlands, created as a result of irrigation would not be considered waters of the U.S. even when augmented on occasion by precipitation." Rodriguez also quotes from an ACE

**Memorandum Decision & Order - 2**

Memorandum that was designed to provide guidance on what constituted navigable waters after *Rapanos v. United States*, 126 S.Ct. 2208 (2006). *See* http://www.usace.army.mil/CECW/Documents/cecwo/reg/cwa_guide/cwa_juris_2dec08.pdf. In this Memorandum, the ACE states that it "will assert jurisdiction over . . . "[n]on-navigable tributaries . . . that are relatively permanent where the tributaries typically flow year-round or have continuous flow at least seasonally (e.g. typically three months)." *Id*.

This clarification of the regulatory language renders the CWA inapplicable to Tenmile Creek, Rodriguez argues, because the Creek's source is irrigation water. Rodriguez claims that if the irrigation water ceased, the Creek would not flow at all, much less for three months. Moreover, Rodriguez claims, the Government is estopped from arguing that the source of Tenmile Creek's waters is anything but irrigation because that is the position taken by the Government in earlier litigation – that all the water in Tenmile Creek was irrigation water.

The prior litigation referred to by Rodriguez was a water rights adjudication in Idaho state court. It was part of the massive Snake River Basin Adjudication, a statutorily-created lawsuit to inventory all surface and ground water rights in the Snake River and its tributaries. Included in the 150,000 water rights claims being adjudicated was a claim by Bradford Shaw, a predecessor in interest of the property at issue here.

Shaw filed his claim in 1990, claiming 1.2 cubic feet per second (cfs.) of water from Tenmile Creek to irrigate 60 acres. *See Exhibit F (Dkt. 29)*. The Department of Water Resources recommended .32 cfs. *See Exhibit H, supra*. The Boise-Kuna Irrigation

**Memorandum Decision & Order - 3**

District (BKID) filed an objection on a "Standard Form 1 – Objection." *See Exhibit I, supra*. This form contained a line of boxes describing various objections such as "Source", "Quantity", and "Priority Date," and invited the filer to "check the appropriate box." The BKID checked the box labeled "Source," and adjacent to the box typed in the following note: "The source should be described as waste waters, and waste waters belong to the [BKID]." Further down the page, in a space designated "Reasons Supporting Objections," the BKID typed,

> There has been no lawful appropriation of this right. The description of the source should have been waste water. The waste waters belong to the [BKID] and are not available for private development and appropriation. Further, any attempted development of this right constitutes a trespass against the drains of the [BKID]."

*Id.* The Government filed a response to the BKID's objection on a "Standard Form 2 – Response to Objection." On this form were a similar line of boxes describing various responses such as "Source," "Quantity," and "Priority Date." The instructions invited the filer to "check the appropriate box" in "responding to the objections to the following elements." The Government checked the box "Source." Further down the page, the form contained a line stating "I object because" followed by two boxes – the Government checked the box labeled "[t]his water right should not exist."

The Government did not explain why it objected. There are no typewritten explanations as there were on the BKID objection form described above.

About a year later, the Government filed its "Disclosure of Witnesses by the United States," listing two witnesses with a brief summary of their expected testimony.

**Memorandum Decision & Order - 4**

Witness Jerry Gregg, the Area Manager of the Snake River Area Office of the Bureau of Reclamation (BOR) was expected to testify "regarding the development and operations of the Boise Project, including the drainage systems." Witness Robert D. Schmidt, a hydrologist for the BOR, was expected to testify "as an expert witness regarding the source of the water in project drains, including the fact that the source of water for this right is wastewater." *See Exhibit K, supra*

The next item from the SRBA litigation submitted by Rodriguez in this case is a "Standard Form 5 – Stipulated Elements of a Water Right." *See Exhibit L, supra*. It is a form pleading stating that the parties – the BKID, BOR, and Rodriguez's predecessor-in-interest – "agree and stipulate that the elements of this water right should be described per the attached." *Id*. The referenced attachment is a single page entitled "Idaho Department of Water Resources – Recommendation of Water Rights Acquired Under State Law." In this document, Rodriguez's predecessor-in-interest agreed to the .32 cfs water right recommended by the Department of Water Resources and also agreed to a "remark" in the water rights decree stating that "[t]he irrigation district has no duty to deliver water to the water right holder to fulfill this water right." *Id*.

The stipulation was approved by both a Special Master and the SRBA court. On October 7, 2008, a one-page Order of Partial Decree was issued by the SRBA court adopting the water right decree. *See Exhibit M, supra*.

## ANALYSIS

### Judicial Estoppel

**Memorandum Decision & Order - 5**

Rodriguez argues that the Government is judicially estopped from arguing that Tenmile Creek has any natural flow because the Government argued in the water rights case that the source of Tenmile Creek's water was irrigation water. Judicial estoppel is sometimes known as the doctrine of preclusion of inconsistent positions. *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008). It "prohibits a litigant from asserting inconsistent positions in the same litigation," *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 917 (9th Cir. 2001), and "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

In determining whether to apply the doctrine, the Court should consider (1) whether a party's later position is "clearly inconsistent" with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to "derive an unfair advantage or impose an unfair detriment on the opposing party." *Id.* at 750-51. Because judicial estoppel "seeks to prevent the deliberate manipulation of the courts," it should not be applied "when a party's prior position was based on inadvertence or mistake." *U.S. v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008), quoting *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir.1997).

While most courts require that the inconsistent statement be adopted by the court in the earlier litigation, some courts apply judicial estoppel even if the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing "fast and loose" with the court. *See Milgard Tempering, Inc. v. Selas Corp of*

**Memorandum Decision & Order - 6**

*America*, 902 F.2d 703, 716 (9th Cir. 1990) (discussing majority and minority positions). The Ninth Circuit has not taken sides, but found common ground in "the purpose . . . to protect the integrity of the judicial process." *Morris v State of Cal.*, 966 F.2d 448 (9th Cir. 1991).

Here, Rodriguez attempts to apply the doctrine of judicial estoppel against the Government. The Supreme Court has recognized that "the Government may not be estopped on the same terms as any other litigant" because "[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *New Hampshire,* 532 U.S. at 830-31. Nor should the doctrine apply where the shift in the government's position is the result of a "change in public policy," *Id*. 755, or a "change in facts essential to the prior judgment." *Id.* The Supreme Court has "repeatedly indicated that an estoppel will rarely work against the government . . ., and we recently stated that a private party trying to estop the government has a heavy burden to carry." *Hampshire,* 532 U.S. at 831 (internal citations omitted).

In a criminal case, the doctrine would largely merge with the protections already afforded by the Due Process Clause. For example, the Due Process Clause prohibits a prosecutor from offering inconsistent theories and facts in order to convict two defendants at separate trials regarding the same crime. *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) (en banc), *rev'd on other grounds*, 523 U.S. 538 (1998). No case in any jurisdiction goes further and holds that the Justice Department is estopped in a criminal

**Memorandum Decision & Order - 7**

case from taking a position inconsistent with that taken earlier in a civil case. Criminal and civil cases are governed by vastly different burdens of proof and legal standards. Given the lack of authority supporting Rodriguez's argument for extension of the doctrine, the Court holds that judicial estoppel cannot be applied in a criminal case based on an inconsistent position taken by the Government in an earlier civil case.

Even if judicial estoppel applied generally, Rodriguez has not shown the necessary inconsistency under the facts of this case to warrant application of the doctrine. Rodriguez has submitted no evidence that in the SBRA litigation over his water right, the Government's counsel claimed – either during an oral argument or through a written brief – that Tenmile Creek lacked any natural flow. Instead, the full extent of the Government's representations to the SBRA court in the Rodriguez case consist of (1) checking a box labeled "water right should not exist" on their response to the BKID's objection, and (2) filing a notification that their expert (Schmidt) was expected to testify that "the source of the water for this right is wastewater."

These bare-boned notations do not necessarily describe a position contrary to that taken here by the Government. The notations could simply be short-hand for an argument that Rodriguez's predecessor-in-interest could not carry his burden of proof. *See* Idaho Code § 42-1411(5) (claimant has burden of proving each element of a claimed water right). That argument would not be clearly inconsistent with anything the Government is arguing here, especially since it is the Government that has the burden of proof in this case.

**Memorandum Decision & Order - 8**

To flesh out these bare-boned notations – and attempt to establish the Government's "clearly inconsistent position" – Rodriguez goes outside his own SRBA litigation and describes the Government's objection to a claim filed by Janicek Properties LLC in the waters of Purdam Gulch Creek. In that litigation, the Government filed a brief with the SBRA court arguing that "essentially all of the water claimed by Janicek is wastewater," and citing in support an affidavit of the Government's expert, R.D. Schmidt. *See Exhibit B (Dkt. 46)* at p. 5. Schmidt's affidavit concludes that irrigation water is "responsible for essentially all of the subsurface return flow to the Purdam drain [Purdam Gulch Creek] at the location of the [Janicek point of diversion]." *See Exhibit D (Dkt. 48)*.

Schmidt also prepared a written report that expressed his opinions in more detail. *See Exhibit A (Dkt. 29)*. That report concludes that "canal seepage and farm infiltration from Boise Project lands and [Nampa Meridian Irrigation District] irrigated lands are responsible for essentially all the groundwater return in the constructed portion of the Purdam Drain, up-gradient from its intersection with Ten Mile Road." *Id*. at p. 20.

The Janicek litigation involved Purdam Gulch Creek, not Tenmile Creek. The final conclusions in Schmidt's affidavit and report were limited to the Purdam Gulch Creek, and he gave no express opinion in either document on the source of the waters claimed by Rodriguez's predecessor-in-interest in Tenmile Creek. The Government's position in civil litigation not involving either the defendant or the water course at issue cannot be used to support application of judicial estoppel.

Rodriguez argues, however, that the Special Master's decision in the Janicek case

**Memorandum Decision & Order - 9**

adopting the Government's arguments prompted the settlement of many other claims in the area, including that of Rodriguez's predecessor-in-interest. There are two flaws in that argument. First, the record does not reveal why Rodriguez's predecessor-in-interest settled. Second, there is no express opinion by Schmidt – or argument by the BOR – in the Janicek litigation regarding the source of the waters in Tenmile Creek. It is true that Schmidt's report is based on a model that includes an area bounded by Tenmile Creek, and a fair implication from his report would be that the same conclusion would apply to Tenmile Creek. But without an express opinion by Schmidt on the source of water in Tenmile Creek, the Court would have to rely on implication to apply the doctrine of judicial estoppel. Rodriguez submits no authority applying the doctrine based on an implication from an argument.

The Court can find nothing in these circumstances indicating that the Government is playing "fast and loose" with the courts or damaging the integrity of the courts. Accordingly, the Court refuses to apply the doctrine of judicial estoppel to this case.

**Collateral Estoppel**

Collateral estoppel, or issue preclusion, requires that the issues be sufficiently similar, actually litigated, and necessarily decided in an earlier case. *See Syverson v. IBM,* 472 F.3d 1072 (9th Cir. 2007). Here, the issues are not similar. In this criminal case, the issue is whether the Government can prove that the waters of Tenmile Creek are "navigable waters," while the issue in the water rights case was whether Rodriguez's predecessor-in-interest could prove that it had a water right in Tenmile Creek. The issues

**Memorandum Decision & Order - 10**

are sufficiently different that the settlement of the water rights case can have no preclusive effect in this criminal case.

**Void for Vagueness**

A criminal statute is not vague if a reasonable person of ordinary intelligence would understand what conduct the statute prohibits. *U.S. v. Cooper*, 173 F.3d 1192 (9th Cir. 1999). Statutes must also provide "an explicit and ascertainable standard" to prevent "arbitrary and discriminatory" application by those charged with enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1971). Under this standard, the Court cannot find the CWA void for vagueness. The definition of navigable waters, set forth above, is sufficiently clear to give notice to persons of ordinary intelligence. Rodriguez's argument is not so much a void-for-vagueness argument – after all, Rodriguez proposes a simple reading of the regulatory rules – but is instead an argument that Tenmile Creek does not fall within those rules. That is an argument to be made at trial.

**Indictment Fails to State an Offense**

Rodriguez bases this argument on the Court's adoption of his judicial estoppel argument. Because the Court has rejected that argument, it will reject this one as well.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 29) is DENIED.

DATED: **April 15, 2011**



_/s/ B. Lynn Winmill_
Honorable B. Lynn Winmill
Chief U. S. District Judge